SAVOY, Judge.
Plaintiff instituted this suit against defendant to recover the sum of $8,080.28. For a cause of action he alleged that on the 9th day of September, 1958, he and defendant entered into a written sub-contract and agreement whereby plaintiff was to furnish and install certain materials and supplies and perform certain work in connection with a contract entered into between defendant and the United States Government for work to be performed by him on certain building or buildings at the England Air Force Base near the City of Alexandria, Louisiana. Plaintiff alleged further that a dispute arose as to the scope of said contract as to the work to be performed by plaintiff and the Rino Electric Company, who likewise held a sub-contract with defendant. Plaintiff stated that he had completed and performed all of the obligations imposed upon him and made amicable demand upon defendant for payment without avail.
Defendant answered the suit generally denying all the allegations made by plaintiff, and further answering the suit stated that in early 1959 he requested plaintiff to furnish and install a certain motor starter included and described in the sections of the specifications included in the sub-contract between him and plaintiff. Following several meetings between the parties and an exchange of letters, plaintiff advised defendant that the motor starter was not included in the sub-contract, and that as a result of this refusal, defendant was required to obtain legal counsel and incurred an expense of $75 for services in connection with the disputed item. Defendant was subsequently advised by plaintiff that the motor starter would be furnished by plaintiff, but would be installed by Rino Electric Company as part of the latter company’s sub-contract with defendant for electrical work on this job. Defendant further stated that as part of plaintiff’s sub-contract, he was obligated to furnish in accordance with the contract specifications a reduced voltage starter to be used *555 in connection with the air conditioning equipment which was to be installed by plaintiff under his sub-contract. On April 28, 1959, data sheets covering the details on the reduced voltage starter proposed to be furnished by plaintiff were submitted by plaintiff to defendant; these sheets were submitted by defendant to the U. S. Army Corps of Engineers for approval as required by the contract. On May 15, 1959, defendant was advised by a representative of the Corps of Engineers that the data sheets submitted were approved “subject to the provisions of the contract specifications.” This information was forwarded on by defendant to plaintiff. On August 11, 1959, defendant was advised by a representative of the Corps of Engineers that the letter approving the reduced voltage starter was rescinded and the starter installed by plaintiff was disapproved. This information was transmitted to plaintiff with a statement that all of the work of plaintiff had to be completed by September 22, 1959. Plaintiff replied through his attorney that the starter had already been furnished and that if a change was desired, a change order should issue from the' Government. This request was transmitted by defendant to the Corps of Engineers on August 18, 1959, and on the same date defendant was advised by a representative of the Corps of Engineers that the starter furnished and installed did not comply with the specifications, as amended, and that under the specifications, approval of the drawings did not relieve defendant from any error which might have existed. Defendant then asked the Corps of Engineers for an extra allowance on the contract as had been requested by plaintiff. This request was denied. Defendant then, employed Rino Electric Company to furnish and install the starter in question for the sum of $1,850, and defendant deducted from the balance due plaintiff this sum.
Defendant alleged further that included in.the plaintiff’s sub-contract was Section 30 of the specifications covering the mechanical ventilating system. Included therein were air filters for the range hood which were required to be furnished and installed with metal frames according to the plans and drawings. On September 17, 1959, plaintiff advised that he would not furnish a filter rack for the described filters. Defendant then employed H. H. Bain Roofing Company for the installation of the filters and -frames at the cost of $104.55, which amount was also deducted from the amount which defendant owed plaintiff.
Shortly after the suit was filed by plaintiff, defendant paid to plaintiff the sum of $5,000, and placed in the Registry of the Court $1,083.28, being the balance which he claimed he owed plaintiff, including costs and interest to date of deposit, this being in the form of a tender.
After a trial on the merits, the district judge granted plaintiff a judgment against defendant in the sum of $179.55, $75 being the charges for attorney’s fees which defendant had withheld from plaintiff, and the sum of $104.55, which defendant had withheld from plaintiff because of having hired Bain Roofing Company to install the filters and frames and having paid it $104.55. He rejected plaintiff’s demand for the amount which defendant had paid the Rino Electric Company to furnish and install the motor starter and which defendant had withheld from plaintiff in his final accounting.
From the judgment of the district court, both parties have appealed to this court.
Defendant concedes in his brief that the district judge was correct in disallowing the claim of defendant for attorney’s fees incurred as a result of a dispute between plaintiff and defendant in the'sum of $75.
The only remaining items for determination are (1) whether the district judge was correct in refusing to allow plaintiff to recover the sum of $1,850, which was the amount defendant paid to Rino Electric Company to install the motor starter as required by the United States Corps of Engineers, and (2) whether the judgment of the district court was correct in allow *556 ing plaintiff $104.55 for furnishing and installing the filters and frames after defendant had employed and paid Bain Roofing Company for installing said equipment.
The main contentions advanced by counsel for plaintiff in connection with the motor starter are:
1. The rejection of the disputed motor starter came too late considering the government’s letter of approval of May 15, 1959.
2. The starter furnished by him was not the one called for by the specifications but the presentation of the submittal data disclosing the differences between the two starters and the approval of the same by the Corps of Engineers, amounted to a change in the contract specifications.
The contract between plaintiff and defendant is set forth in the record as Exhibit D-30, which consists of two instruments, namely, plaintiff’s bid and defendant’s purchase order. Plaintiff’s bid to defendant states in part, “We propose to do the work covered by the following sections and items as per plans and specifications.” It was noted that the sections of the specifications were referred to by number in the body of the bid, and defendant’s purchase order also referred to the sections of the specifications by numbers.
The pertinent sections of the contract specifications read as follows:
“SC-9 Shop Drawings and Spare Parts List
“a. Shop Drawings.
“(1) The contractor shall submit to the contracting officer for approval seven copies of all shop drawings as called for under the various headings of these specifications. These drawings shall be complete and shall contain all required detailed information. If approved by the contracting officer, each copy of the drawings will be identified as having received such approval by being so stamped and dated. The contractor shall make any corrections required by the contracting officer Six sets of all shop drawings will be retained by the contracting officer and one set will be returned to the contractor. The approval of the drawings by the contracting officer shall not be construed as a complete check but will indicate only that the general method of construction and detailing is satisfactory. Approval of such drawings will not relieve the contractor of the responsibility for any error which may exist, as the contractor shall be responsible for the dimensions and design of adequate connections, details, and satisfactory construction of all work." (Italics ours).
“GC-19 Inspection.
“The work will be conducted under the general direction of the contracting officer and is subject to inspection by his appointed inspectors to insure strict compliance with the terms of the contract. No inspector is authorized to change any provision of the specific-actions without written authorization of the contracting officer, nor shall the presence or absence of an inspector relieve the contractor from any requirements of the contract. As soon as practicable after the completion of the entire work, or any divisible part thereof as may be designated in these specifications, a thorough examination thereof will be made by the contracting officer at the site of the work. If such work is found to comply fully with the requirements of the contract, it will be accepted; and final payment thereof will be made in accordance with the clause of the General Provisions entitled ‘Payments to Contractors.’ ” (Italics ours.)
Counsel for plaintiff and defendant have cited many cases in their respective *557 briefs in connection with the instant case. An examination of these cases reveals that they deal with the law of contracts in general. However, in this case, we are dealing with a specific contract entered into between defendant and the United States Government, and plaintiff is bound by the terms and conditions of the general contract between defendant and the Government.
This Court is of the opinion that the Government’s letter of approval of May IS, 1959, was not a final one under the terms and conditions of the general contract between defendant and the Government, and that under the very terms of the said contract the Government officials could reject any installation which did not comply with the contract, as was done in the instant case. We find no error in the ruling of the trial judge that defendant could retain from the amount owed to plaintiff the sum of $1,850 for the motor starter, being the sum which defendant had to pay to Rino Electric Company in order to satisfy the United States Corps of Engineers.
In connection with the filters and frames, we are also of the opinion that the judgment of the district court was correct in holding that defendant should pay plaintiff the sum of $104.55 for the installation of the metal frames. We cannot say that the trial judge erred in finding from the testimony that the sub-contract was not intended to cover installation of this item.
For the reasons assigned, the judgment of the district court is affirmed. Plaintiff is to pay all costs in this court.
Affirmed.